IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TRIDIA CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>AVOCENT CORPORATION and AVOCENT HUNTSVILLE CORPORATION<br><br>  Defendants. | CIVIL ACTION NO. |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Tridia Corporation ("Tridia") files this Complaint for Patent Infringement against Defendants Avocent Corporation and Avocent Huntsville Corporation (collectively "Defendants" or "Avocent"), and alleges as follows:

**Nature of Action**

1. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, seeking monetary damages and other relief against Avocent due to its infringement of Tridia's United States Patent No. RE38,598 ("the '598 Patent").

## The Parties

2. Tridia is a corporation organized and existing under the laws of the State of Georgia, having a principal place of business at 1355 Terrell Mill Road, Marietta, Georgia.

3. On information and belief, Defendant Avocent Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 4991 Corporate Drive, Huntsville, Alabama.

4. On information and belief, Defendant Avocent Huntsville Corporation is a corporation organized and existing under the laws of the State of Alabama, having a principal place of business at 4991 Corporate Drive, Huntsville, Alabama.

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331 and 1338(a) because this dispute is a civil action for patent infringement arising under the Patent Laws of the United States 35 U.S.C. § 1 *et. seq.*

6. Upon information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Georgia Long Arm Statute, due at least to each Defendant's substantial

business in this forum, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals and businesses in Georgia and in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Upon information and belief, each Defendant has transacted business in this District, and has committed and/or induced acts of patent infringement in this District.

## Background

8. Tridia is based in Atlanta, Georgia and has been an innovator in the software business since 1987. Tridia develops multi-platform connectivity software solutions, which enable companies to remotely access, manage, support and share computer applications in the UNIX/LINUX and Windows® environments. Some of Tridia's 3,000 enterprise customers include Home Depot, Toshiba Corporation, and L.L. Bean, Inc.

9. At the time of filing of the application for U.S. Patent No. 5,909,545 (the "'545 Patent"), the Internet was in its infancy. While the Internet allowed the downloading of software to a computer, the software downloading process was

complicated, requiring knowledge about hardware and software features, such that a consumer might not be able to install the software.

10. Moreover, while remote control programs existed at the time the '545 Patent was filed, one of the limitations of such programs was that they required a component of the remote control program to already be installed on both computers prior to any attempt to remotely control one of the computers.

11. Thus, what was needed was (a) a way to provide on-demand access to another computer without requiring the user to download and install a software program on the user's system and (b) a remote control program that did not require pre-installation of any components on each computer in order to operate.

12. The '545 Patent was filed in January 19, 1996. The '545 Patent, entitled "Method and System for On-Demand Downloading of Module to Enable Remote Control of an Application Program over a Network" was duly and legally issued by the United States Patent and Trademark Office on June 1, 1999. A true and correct copy of the '545 Patent is attached as Exhibit A.

13. The '545 Patent underwent a reissue proceeding before the United States Patent and Trademark Office which resulted in the issuance of United States Patent No. RE38,598 on September 21, 2004. A true and correct copy of the '598 Patent is attached as Exhibit B.

14. The '598 Patent was reexamined by the United States Patent and Trademark Office, Reexamination Request No. 90/010,092, and had its patentability reaffirmed on May 18, 2010. A true and correct copy of the Ex Parte Reexamination Certificate is attached as Exhibit C.

15. The inventors of the '598 Patent, Vincent Frese II, W. Brian Blevins, and John P. Jarrett, were employees of Tridia at the time of its filing and remain employees today.

16. Tridia is the owner and assignee of all right, title and interest in and to the '598 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

17. The '598 Patent is presumed valid.

18. The '598 Patent claims, *inter alia*, a method for allowing a first computer to establish on-demand remote control of a second computer. The claimed on-demand remote control features are often included in "KVM over IP" devices.

19. A KVM over IP device provides "keyboard, video and mouse" functions that enable a user of that device to control multiple computers or servers in a network. These devices often are used by IT engineers to manage and maintain an enterprise network, such as servers in a data center. The ability of an

IT engineer to have on demand remote control of the KVM over IP device from another computer is an important function for a KVM over IP device that is demanded in the market.

20. The technology claimed by the '598 Patent is incorporated into Tridia's iTivity<sup>TM</sup> product which allows corporate clients on demand remote support of their various computer-based systems and devices.

21. The remote control software industry, including KVM over IP providers, have recognized the value of the '598 Patent and multiple Fortune 1000 companies are licensees of its claimed technology.

22. On its website, Avocent touts that one of the key benefits of SwitchView IP 1020 product is "[t]he simple and compact design allows for ease of installation using standard TCP/IP connectivity. With no software agents needed, configuration and installation are simplified on the target servers. *See* http://www.emersonnetworkpower.com/documentation/en-us/brands/avocent/documents/datasheets/01/svip1020-ds-en.pdf (last accessed November 6, 2014).

23. The User Guide for Avocent's SwitchView IP 1020 product states:

> The SwitchView IP 1020 remote access device on-board web interface software uses a Java-based program to

display the Video Viewer window. The SwitchView IP 1020 remote access device OBWI automatically downloads and installs the Video Viewer the first time it is opened.

*       *       *

No special software or drivers are required on the attached, or client, computers.

24.   On information and belief, Avocent manufactures and/or sells a number of KVM over IP products, including MergePoint (all models), MergePoint Unity (all models), MPU104E, MPU108E, MPU108EDAC, MPU1016, MPU1016DAC, MPU2016, MPU2016DAC, MPU2032, MPU2032DAC, MPU4032, MPU4032DAC, MPU8032, MPU8032DAC, MPU4PATHS01, AutoView (all models), AutoView 3008, AutoView 3016, AutoView 3050, AutoView 3100, AutoView 3200, AV3008, AV3016, AV3200, SwitchView (all models), SwitchView IP 1020, DSR Switch (all models), DSR1024PS2, DSR1024USB, DSView 4 Management Software – (all models), DSV4-START, DSV4-STND, DSV4-PLUS, DSV4-PREM, DSV4-MAX, DSV4-SPOKE, DSV4-DEV1, DSV4-DEV10, DSV4-DEV50, DSV4-DEV100, DSV4-DEV500, DSV4-

DEV1000, DSV4-DEV10000, DSView 3 – (all models), RPM-BASE50, RPM-BASE100, RPM-BASE250, RPM-BASE500, RPM-BASE1000, RPM-BASE2500, RPM-SPOKE, RPM-PDU25, RPM-PDU50, RPM-PDU100, RPM-PDU250, RPM-PDU500, Digital KVM Extension (HMX) – (all models), HMX1050, HMX1070, HMX2050, HMX Manager, HMIQDHDD, HMIQ SHDI, Rack Power Manager – (all models), and Liebert SiteScan Web – (all models) (collectively, "the Accused Instrumentalities").

25. On information and belief, Avocent has sold and/or provided the Accused Instrumentalities, and continues to sell and/or provide the Accused Instrumentalities, directly and/or indirectly, to third parties, including but not limited to customers, manufacturers, distributors, and/or resellers (collectively, "Downstream Parties").

26. Avocent has had actual knowledge and notice of the '598 Patent, and of the patent's coverage of the Accused Instrumentalities, since at least as early as June 27, 2013 when Tridia contacted Avocent about licensing the technology covered by the '598 Patent.

27. Avocent has refused to license the '598 Patent and has continued to make, use and sell the Accused Instrumentalities knowing they infringe Tridia's patented technology.

## COUNT I
## Infringement of U.S. Patent No. RE38,598

28. Tridia repeats and realleges paragraphs 1-27 above as if set forth herein.

29. On information and belief, Avocent has directly infringed and continues to infringe at least claims 31, 58, 60 and 63 of the '598 Patent within the meaning of 35 U.S.C. § 271 by, without Tridia's authority, importing, making, using, selling, and/or offering to sell in the United States Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

30. On information and belief, Downstream Parties have been and are now infringing, including under 35 U.S.C.§ 271(a), at least claims 31, 58, 60 and 63 of the '598 Patent by making, using, selling, and/or offering to sell in the United States Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

31. On information and belief, Avocent has, since at least June 27, 2013, been willfully blind to the fact that such acts by Downstream Parties of making, using, selling, and/or offering to sell Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities

directly infringe the '598 Patent. Tridia has further notified Avocent of such infringement through the filing of this complaint.

32. On information and belief, Avocent through the sale and distribution of Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities is actively, intentionally, and/or knowingly inducing the direct infringement of at least claims 31, 58, 60 and 63 of the '598 Patent by Downstream Parties, including in this District and elsewhere in the United States.

33. On information and belief, Avocent has encouraged and continues to actively encourage Downstream Parties to directly infringe the '598 Patent by at least (a) marketing Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities to Downstream Parties, (b) providing user guides and technical specifications to Downstream Parties that encourage the use of applications and methods of use for such Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities, including those on Avocent's website, www.emersonnetworkpower.com, (c) providing technical training to Downstream Parties, and (d) providing technical support and assistance to Downstream Parties

during the life cycle of the Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

34. On information and belief, as a proximate result of Avocent's inducement, the Downstream Parties directly infringed and continue to directly infringe at least claims 31, 58, 60 and 63 through the use of Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

35. On information and belief, Avocent knew or should have known that their conduct would induce the Downstream Parties to remotely access a computer or server in a manner that directly infringes at least claims 31, 58, 60 and 63 of the '598 Patent.

36. Thus, Avocent has specifically intended to induce, and has induced, Downstream Parties to infringe at least claims 31, 58, 60 and 63 of the '598 Patent, and Avocent has known of or been willfully blind to such infringement. Avocent has advised, encouraged, and/or aided Downstream Parties to engage in direct infringement, including through its encouragement, advice, and assistance to Downstream Parties to use Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

37. Based on, among other things, the foregoing facts, Avocent has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of at least claims 31, 58, 60 and 63 of the '598 Patent.

38. Further, Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are imported, sold, and/or offered for sale in or into the United States by Avocent and are especially made and adapted – and specifically intended by Avocent – to be used to infringe at least claims 31, 58, 60 and 63 of the '598 Patent.

39. The Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities imported, sold, and/or offered for sale in or into the United States by Avocent are not staple articles or commodities of commerce and, due to their specific design, do not have substantial non-infringing uses.

40. Since at least June 27, 2013, Avocent has been willfully blind to the fact that the Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are especially made and adapted for – and are in fact used – by Avocent and infringe at least claims 31, 58, 60 and 63 of the '598 Patent, and that the Avocent products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are not staple

articles or commodities of commerce suitable for substantial non-infringing use. Tridia has further notified Avocent of the foregoing facts through the filing of this complaint.

41. Based on, among other things, the foregoing facts, Avocent has contributorily infringed, and continues to contributorily infringe, at least claims 31, 58, 60 and 63 of the '598 Patent under 35 U.S.C. § 271(c).

42. Tridia has suffered damages as a result of the direct and indirect infringing activities of Avocent and will continue to suffer damages as long as those infringing activities continue.

43. Tridia has been damaged and will continue to be damaged by Avocent's infringing conduct and by Avocent's conduct in contributing to and inducing infringement of the '598 Patent by others.

44. Tridia has been and will continue to be irreparably harmed by Avocent's infringement of the '598 Patent unless and until such infringement is enjoined by this Court.

45. Avocent has directly and indirectly infringed the '598 Patent willfully and deliberately. Avocent had knowledge of the '598 Patent since at least June 27, 2013 and knew or should have known that there was an objectively high

likelihood that its actions constituted infringement of one or more claims of the '598 Patent.

46. As a result of Avocent's deliberate, intentional and willful infringement, Tridia is entitled to enhanced damages under 35 U.S.C. § 284.

47. Tridia has suffered damages as a result of Avocent's infringement of the '598 Patent in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Tridia respectfully requests the following relief:

(a) A judgment that Avocent has infringed the '598 Patent in violation of 35 U.S.C. § 271;

(b) A judgment that Avocent has contributed to the infringement of the '598 Patent by others and/or induced the infringement of the '598 Patent by others in violation of 35 U.S.C. § 271;

(c) A permanent injunction be issued, pursuant to 35 U.S.C. § 271, restraining and enjoining Avocent, its officers, agents, attorneys, and employees, and those acting in privity or concert with them, and their successors and assigns, from engaging in infringing conduct;

(d) A judgment that Avocent's infringement of the '598 Patent has been willful under 35 U.S.C. § 284;

(e)     A judgment against Avocent that the present case is exceptional pursuant to 35 U.S.C. § 285;

(f)     An award to Tridia of such monetary damages to which it is entitled to compensate it for Avocent's infringement of the '598 Patent, with interest as fixed by the Court, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of Avocent's willful infringement;

(g)     An award to Tridia of its costs, expenses, and fees, including reasonable attorneys' fees, in this action;

(h)     Such other relief as this Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Tridia hereby demands a trial by jury on all claims and issues so triable.

Dated this 7th day of November 2014.

Respectfully submitted,

s/ *Douglas D. Salyers*
Douglas D. Salyers, Esq.
Georgia Bar No. 623425
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216
Tel:  404.885.3208
Fax:  404.885.3900
Email: doug.salyers@troutmansanders.com
*Attorney for Plaintiff Tridia Corporation*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing was prepared using Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1.

TROUTMAN SANDERS LLP

*s/ Douglas D. Salyers*